Steven L. Rinehart (USB #11494)
**VESTED LAW, LLP**
110 S. Regent Street, Suite 200
Salt Lake City, UT 84111
Telephone: (888) 941-9933
Mobile: (801) 347-5173
Facsimile: (801) 665-1292
Email: steve@utahpatentattorneys.com
*Attorney for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| SOCK CITY, a Utah corporation;<br><br>                              Plaintiff,<br>vs.<br><br>OCEANSIDE CAPITAL CORP., a foreign corporation;<br><br>                              Defendants. | Case No. 2:19-CV-831<br><br>**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND**<br><br>Magistrate Judge Cecilia Romero |

### I.        <u>STANDARD</u>

A party may amend its pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 21 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.  Fed. R. Civ.  P. 15(c).

In this case at bar, Plaintiff seeks to amend its original Complaint for a second time. There is no written consent of the adverse party. Plaintiff has sought leave of the Court to amend; however, "leave shall be freely given ..." does not mean that every proposed amendment is permitted without meeting the further requirements of Rule 15(c) and relevant case law. This Court has stated, regarding standards for amendment of the pleadings, in *Koch v. Koch Indus., Inc.*, 127 F.R.D. 206, 209 (D. Kan. 1989) that the "four relevant factors are undue prejudice to the other party, undue delay, bad faith, and <u>futility of amendment</u>." (emphasis supplied). *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See, Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004); *Frame v. Hood*, 1993 U.S. App. LEXIS 27351 (10th Cir. 1993); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Williams v. Olathe, Kansas Police Dep't*, 1991 U.S. App. LEXIS 22990 (10th Cir. 1991).

## II.   ARGUMENT

**A.   Plaintiff's Proposed Amendments are Futile.**

Plaintiff asserted a single claim for cybersquatting in its original Complaint and First Amended Complaint. This single claim has previously been shown by Defendant to be subject to dismissal under Rule 12(b)(6) as a matter of law in a motion now pending before the Court. In a desperate attempt to save its case in some form, Plaintiff now seeks to interpose a second claim for trademark infringement in its proposed Second Amended Complaint (hereinafter "SAC"), arguing that Defendant has infringed Plaintiff's mark by "posting links to third-party retail websites on the domain sockcity.com". (SAC ¶ 24.) In short, Plaintiff believes that Defendant is profiting from cost-per-click (CPC) links on the landing page to which the disputed domain <sockcity.com> in this case resolves.

No evidence of this purported infringement is annexed to the Second Amended Complaint. Plaintiff's proposed second claim cannot survive as a matter of law, even assuming Plaintiff's threadbare, single-sentence recital is taken as true.

To state an actionable claim for trademark infringement under the Lanham Act, a plaintiff must demonstrate that the defendant made "use" of the plaintiff's mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services" and that "such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(l)(a). As the Third Circuit has held, a plaintiff must demonstrate that "the defendant's use" of the plaintiff's valid trademark "to identify goods or services causes a likelihood of confusion." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) (citing *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir. 2000)).

Plaintiff fails to satisfy this test at the threshold. Even when viewed most favorably to Plaintiff, the Complaint does not allege that Oceanside "used" the SOCK CITY mark "to identify goods or services" of Plaintiff. "There can be no liability under the Lanham Act absent the use of a trademark in a way that identifies the products and services being advertised by the defendant." *Wells Fargo & Co. v. When U.com, Inc.*, 293 F. Supp. 2d 734, 757 (E.D. Mich. 2003). *See also 1-800 Contacts, Inc. v. When U.com, Inc.*, 414 F.3d 400, 412 (2d Cir.), cert. denied, 126 S. Ct. 749 (2005) ( "'[U]se' must be decided as a threshold matter because ... no ... activity is actionable under the Lanham Act absent the 'use' of a trademark."); *DaimlerChrysler AG v. Bloom*, 315 F.3d 932, 936 (8th Cir. 2003) (finding that each provision of the Lanham Act "requires, as a prerequisite to finding liability, that the defendant 'use ...' the protected mark or a colorable imitation thereof"); *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 626 (6th

Cir 1996) (the defendant's "use of a protected mark ... is a prerequisite to the finding of a Lanham Act violation") (emphasis in original).

"In the ordinary trademark infringement case,... there is no question that the defendant used the mark, [and so] the analysis proceeds directly to the issue of whether there is a likelihood of confusion." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F. Supp. 949, 958 (C.D. Cal. 1997), aff'd, 194 F.3d 980 (9th Cir. 1999); *see also Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 695 (6th Cir. 2003). Here, in contrast, "there is a preliminary question about whether defendant [is] using the challenged mark in a way that identifies the source of [its] goods." *Interactive Products*, 326 F.3d at 695. As described above, the Complaint does not allege that either the advertisement that forms the basis for Plaintiff's single-sentence claim or Oceanside's website meet this standard. Because the Complaint does not allege any use of Plaintiff's trademark to identify Plaintiff's goods or services, "trademark infringement and false designation of origin laws do not apply," and the claim fails as a matter of law. *See id.* at 695.

Having cost-per-click advertisements on a website is not "use" of a mark under the Lanham Act, but is instead akin to a manufacturer's contracting with a drugstore to place its generic cereal next to Cheerios, or to a fast-food chain's instruction to its franchisees to open restaurants adjacent to the locations of its more famous competitor.

As the courts have made clear, such practices are a permitted, "'non-trademark' way" of "using" another's mark - "that is, in a way that does not identify the source of a product." *Interactive Products*, 326 F.3d at 695. As the Second Circuit explained, "it is routine for vendors to seek specific 'product placement' in retail stores precisely to capitalize on their competitors' name recognition. For example, a drug store typically places its own store-brand generic

4

products next to the trademarked products they emulate in order to induce a customer who has specifically sought out the trademarked product to consider the store's less- expensive alternative." *1-800 Contacts*, 414 F.3d at 411. *See also Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1035 (9th Cir. 2004) (Berzon, J., concurring) (noting that Internet advertisement that provides a user with the choice of visiting the advertiser's website instead of the plaintiff's is no different from Macy's stocking its own brand of clothing next to Calvin Klein's, which is "[c]ertainly not" an infringement of Calvin Klein mark).

In each of these situations, the alleged infringer "uses" another company's mark, but not to identify his goods or services. The mark is never "place [d] ...on any goods or services in order to pass them off as emanating from or authorized by" the mark owner. *1-800 Contacts*, 414 F.3d at 408. Instead, the alleged infringer in each situation "uses" the mark solely to guide its own marketing or the placement of its products or advertisements. But a company's "utilization of a trademark in a way that does not communicate it to the public ... simply does not violate the Lanham Act, which is concerned with the use of trademarks in connection with the sale of goods or services in a manner likely to lead to consumer confusion as to the source of such goods or services." *Id.* at 409. "Use" under the Lanham Act requires that the accused infringer "caus[es] the public to see the protected mark and associate the infringer's goods or services with those of the mark holder." *DaimlerChrysler*, 315 F,3d at 939 (holding that a defendant's registration of the 1-800-MERCEDES "vanity" telephone number was not a "use" of the plaintiff's mark under the Lanham Act).

Courts have explicitly rejected Lanham Act claims in the context of Internet advertising in cases virtually identical to this one: where a plaintiff complains about a competitor's "use" of the plaintiff's trademark to "trigger" display of the competitor's online ads. Three cases

5

involving the Internet advertising company WhenU.com, Inc. ("WhenU") are nearly indistinguishable from this case. WhenU distributes a software program that causes an Internet user's screen to display "pop-up" advertising keyed to the content of the websites the user visits. *1-800 Contacts*, 414 F.3d at 404-05. *See also Wells Fargo*, 293 F. Supp. 2d at 738-39; *U-Haul Int'l, Inc. v. When U.com, Inc.*, 279 F. Supp. 2d 723, 725-26 (E.D. Va. 2003). The plaintiff in each of the WhenU cases alleged trademark infringement, complaining that WhenU's use of a web address containing the plaintiff's mark as a trigger for the display of the competing advertisements and "the fact that WhenU's pop-up ads appear on the same screen as [the plaintiff's] website and logo" were enough to constitute actionable "use" under the Lanham Act. *U-Haul*, 279 F. Supp. 2d at 727. *See also 1-800 Contacts*, 414 F.3d at 408-10; *Wells Fargo*, 293 F. Supp. 2d at 758.

  As the Second Circuit held, "as a matter of law," such non-identifying use - both inclusion of the plaintiff's marks in WhenU's display of advertisements and WhenU's presentation of advertisements immediately adjacent to the display of the plaintiff's branded website - is not "'use' [of the plaintiff's] trademarks within the meaning of the Lanham Act." *1-800 Contacts*, 414 F.3d at 403. *See also id.* at 410 (explaining that "[t]he fatal flaw" in plaintiff's claim was that the "ads do not display the 1-800 trademark"). This is because "WhenU does not use any of the plaintiffs'' trademarks to indicate anything about the source of the products and services it advertises." *Wells Fargo*, 293 F. Supp. 2d at 762. *See also id.* at 759 (noting that the "typical consumer does not have access" to the directory containing plaintiffs' marks that WhenU uses "to determine what advertisements to direct to consumers"); *U-Haul*, 279 F. Supp. 2d at 728 ("U-Haul fails to adduce any evidence that WhenU uses U-Haul's trademarks to identify the source of its goods or services,").

Finally, recognizing Plaintiff's SAC is dismissable is fully consistent more recent case law from the Tenth Circuit, including *1-800 Contacts, Inc. v. Lens.com, Inc*, 722 F.3d 1229 (10th Cir. 2013). Defendant's position is also consistent with the policies underlying trademark law and prior action from this Court interpreting *1-800 Contacts*. Defendant refers the Court to the recent analysis involving this issue in *Jive Commerce v. Wine Racks America, et al.*, No. 1:18-cv-49, Mem. Op. at 11- 15 (D. Utah Aug. 21, 2018) attached hereto as **Exhibit A**.

Furthermore, even in the very case relied upon by Plaintiff in opposing dismissal, the Tenth Circuit held that "backlinks" on one website to another is "too attenuated" to constitute commercial speech. *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045. 1048-1049 (10th Cir. 2008).

Trademark law is designed in part to reduce consumers' search costs, making it easier for them to find the products and services for which they are looking without having to investigate the source of those goods and services. *See, e.g., Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) (stating that federal trademark law "reduces the customer's costs of shopping and making purchasing decisions"). Thus, the courts have made clear that the purpose of trademark law is to protect a mark's "source identification" function and that parties may "use" another person's marks in ways that do not implicate that function. *See Wells Fargo*, 293 F. Supp. 2d at 761.

**B.     Plaintiff Fails to Allege Facts Sufficient to Support a Trademark Infringement Claim.**

Plaintiff's claim of trademark infringement lacks properly pleaded factual bases. The facts pleaded in Count II is nothing but a threadbare recital of various of the legal elements of the action and is not supported by sufficient factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), 129 S. Ct. at 1940 ("While legal conclusions can provide the complaint's framework,

7

they must be supported by factual allegations."). Count II is merely a "formulaic recitation of the elements of" the cause of action of trademark infringement. In light of the factual shortcomings of the allegation of trademark infringement, the Court should deny Plaintiff leave to amend and file the proposed Second Amended Complaint.

### III.  CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's Motion to Leave to File Second Amended Complaint.

DATED AND SIGNED this the 9th day of February, 2020.

VESTED LAW, LLP

<u>By: /s/ Steven Rinehart</u>           .
Steven Rinehart
*Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of February, 2020, a true and correct copy of the foregoing Memorandum in Opposition to Motion to Leave to Amend was served on the following person(s) indicated below:

| All parties/counsel of record, including:<br><br>Casey W. Jones<br>STRONG AND HANNI<br>102 South 200 East, Suite 800<br>Salt Lake City, UT 84111<br>Phone: (801) 532-7080<br>*Attorney for Plaintiff* | _____ US Mail, Postage Prepaid<br><br>_____ Facsimile<br><br>_____ Hand-Delivery<br><br>_____ Federal Express<br><br>__X__ Electronically (ECF/PACER) |
|---|---|

/s/ Steven Rinehart            .

Steven Rinehart